UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLORIA CAVALUZZI *et al.*, Plaintiffs, -v- COUNTY OF SULLIVAN, Defendant. | 23 Civ. 11067 (PAE) <br> <u>ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

The Court has resolved the parties' pending motions for summary judgment in the above-captioned case, Dkt. 132, and plaintiffs' motion for reconsideration, Dkt. 143. What remains is the discrete issue of damages owed the 15 plaintiffs who prevailed on their § 1983 claims. On March 6, 2026, the Court ordered the parties to provide supplemental briefing as to their respective methodologies for calculating damages. Dkt. 132. On March 13 and 20, respectively, the County of Sullivan ("County") and plaintiffs filed such briefs. *See* Dkts. 134–35.

Plaintiffs contend that their respective damages are measured by the "Gain" reported on the "Gains Report," a report which tabulates the foreclosure surplus—the value of a plaintiff's property net of the tax lien, and allowable fees, penalties, and interest—based on title reports and auction results. Dkt. 135. The County urges the Court instead to adopt and apply an "equitable" standard, under which each plaintiff taxpayer's recovery would further be reduced by all "liens, mortgages, and judgments" on the property. Dkt. 134 at 2.[1]

[1] To the extent the County argues that the Court should apply the procedures set forth in RPTL § 1197—the New York legislature's post-*Tyler* amendment—to resolving plaintiffs' claims, this Court has held on more than one occasion that § 1197 does not apply to plaintiffs. *See Cavaluzzi*, 825 F. Supp. 3d at 288 (identifying limited retroactivity of § 1197); *Cavaluzzi v. Cnty. of Sullivan*, No. 23 CIV. 11067 (PAE), 2024 WL 5238644, at *3 (S.D.N.Y. Dec. 27, 2024).

The County is incorrect. Its argument is based on misapprehension of the operation of the RPTL. Under Article 11, when a County commences foreclosure proceedings, it gives notice to all "persons owning or having or claiming to have an interest in the real property." RPTL § 1124 (McKinney 2023). That notice states:

> All persons having or claiming to have an interest in the real property described in such petition are hereby notified that the filing of such petition constitutes the commencement by the Tax District of a proceeding in the court specified in the caption above to foreclose each of the tax liens therein described by a foreclosure proceeding in rem.

*Id.*

That process thus affords a mechanism for third-party lienholders to make claims against the property. *Id.* § 1125. An interested party, such as a third-party lienholder, may either redeem the property or reach an agreement with the tax district that its rights be released for a share of the proceeds obtained from the sale of such parcel by the County. *Id.* § 1150. All interested parties that do not answer or move to redeem the property in the foreclosure proceeding are forever "barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel." *Id.* §§ 1126, 1131. In this manner, foreclosure under Article 11 eliminates all prior mortgages, judgments, and junior liens against the foreclosed *rem*, so as to ensure the new title-holder obtains clear title to the property. *Id.* § 1136.[2]

But, critical here, after the sale of the property at auction, the County retains the sales proceeds to the extent of the tax lien. It is then that the surplus (net of allowable fees, penalties, and interest) is calculated, and, under *Tyler v. Hennepin County*, 598 U.S. 631 (2023), that

[2] The County's treasurer testified that the Article 11 process was used in connection with the foreclosure sales at issue here, save that the County retained the surplus, rather than remitting it to the property owner, as the Takings Clause required. *See Cavaluzzi v. Cnty. of Sullivan*, 825 F. Supp. 3d 279, 308 (S.D.N.Y. 2026).

surplus belongs to the property holder. *See, e.g.*, RPTL § 1196(1)(a)(i) (a surplus may be determined by taking the "sum of the total amount of taxes due plus interest, penalties and other charges" and subtracting "the amount paid for the property.").

Contrary to the County's suggestion, this approach does not unjustly enrich a plaintiff. The foreclosure sale does not absolve the former owner of her personal liability for debts that had been secured by the foreclosed property. *See id.* §§ 1120, 1136. Such a creditor had the right—and subject to applicable limitations periods—retains the right today to pursue legal action against the former property owner. Notably, the County does not represent that it reached agreements with any creditors of any of these plaintiffs to pay out to them any proceeds it retained from any of the sales in this case, or that it made any such payments The County therefore does not argue that ordering it to give a plaintiff the surplus as calculated under the Gains Report would require the County to pay out more money from a foreclosure sale than it unlawfully retained.

The Court, accordingly, adopts plaintiffs' approach, which is consistent with the operation of Article 11 and the accrual date determined by the Court.[3] *Cavaluzzi v. Cnty. of Sullivan*, 825 F. Supp. 3d 279, 301–02 (S.D.N.Y. 2026). Plaintiffs' approach identifies the "gain" as the difference between (1) the price for which, after all liens and encumbrances on the property were resolved, the County sold the property at auction, and (2) all moneys the plaintiff owed to the County (inclusive of any additional fees, penalties, and interest allowed by law).

---

[3] Insofar as the plaintiffs suggest that they be awarded "pre-judgment" interest on the basis of this accrual date, Dkt. 135 at 4, such is unwarranted. *See Maher v. Glob. Factors LLC*, No. 22 Civ. 6506, 2024 WL 3356985, at *31 (S.D.N.Y. July 8, 2024), *aff'd*, No. 24-2068-CV, 2025 WL 1554761 (2d Cir. June 2, 2025); *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 833–34 (2d Cir.), *cert. denied*, 506 U.S. 946 (1992).

The Gains Report ably implements this formula. It defines "Gain" as the difference between the "Bid Amount" and the sum of the buyers premium, $20 fee, clerk fees, advertising fees, outstanding taxes, search fee, and interest. *See id.* at 308 n. 26. And neither party contests the factual accuracy of the inputs into the Gains Report or its bottom-line conclusions. Indeed, in the facts to which the parties jointly stipulated in connection with summary judgment briefing, the County stipulated to the Gains Report's calculations to determine the "difference between the amount of the sale" of a plaintiff's property and "the amount [she] owed the County." *See id.* And the County, insofar as it challenged plaintiffs' assessment of the sums they were owed, did not dispute the "mathematical calculation." *See* Dkt 117 ("Ps' SMF") ¶¶ 134 (Alleyne), 156 (Coviello), 102 (Crumbley and Emeigh), 167 (DeMarinis), 46 (Edelgass), 57 (Eisenberg), 80 (Gorr), 178 (Kozak), 200 (Prendergast), 91 (Madlill), 122 (Tsoucalas).

Accordingly, the Court finds that, as to damages, the plaintiffs are entitled to damages as set forth in this footnote.[4] Plaintiffs are also entitled to post-judgment interest on this judgment amount at the federal statutory rate pursuant to 28 U.S.C. § 1981.

The Clerk of Court is respectfully directed to enter judgment, including for the prevailing plaintiffs consistent with this order, to terminate the motion pending at docket 135, and to close the case.

---

[4] These are: Lyndon Alleyne ($32,722.08), Caterina and Pasquale Coviello ($14,297.40), Roseanne Crumbley and Kenny Emeigh ($65,789.77), Lisa DeMarinis ($51,153.00), Harvey Edelgass ($247,543.75), Lawrence and Steven Eisenberg ($96,016.84), Louise and Richard Gorr ($84,623.79), Tatiana Kozak ($56,428.92), Thomas Prendergast ($14,930.58), Joseph Szymczak as principal of Madlill Properties Corporation ($21,391.56), and Amber Tsoucalas as executrix of the Estate of Everett Tsoucalas ($32,500). *See Cavaluzzi v. Cnty. of Sullivan*, 825 F. Supp. 3d 279, 301 n.21; Dkt. 117 ("Ps' SMF") ¶¶ 134, 156, 102, 167, 46, 57, 80, 178, 200, 91, 122.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: September 18, 2026
New York, New York