**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GLORIA CAVALUZZI, et al.,

Plaintiffs,

- against -

Case No.: 1:23-cv-11067 (PAE)

COUNTY OF SULLIVAN, et al.,

Defendants.

# DEFENDANT COUNTY OF SULLIVAN (THE "COUNTY DEFENDANT") MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Dated: October 12, 2026

**HARRIS BEACH MURTHA CULLINA PLLC**
H. Todd Bullard, Esq.
Taville T. Francis, Esq.
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8800
Email: tbullard@harrisbeachmurtha.com
*Attorneys for Sullivan County, Nancy Buck, and Kathleen Lara*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

I. Standard of Review ........ 1

A. Applicable Federal Standard For Motion to Alter or Amend a Judgment. ........ 1

B. Applicable Standard for Reconsideration. ........ 2

i. Clear Error ........ 2

ii. Manifest Injustice ........ 2

POINT I ........ 4

THE COURT'S FAILURE TO ADDRESS THE SURVIVING CLAIM AND REQUESTED DAMAGES HEARING WARRANTS RECONSIDERATION. ........ 4

POINT II ........ 5

IT IS AGAINST PUBLIC POLICY FOR THE COURT TO PERMIT WRONGDOERS TO BENEFIT FROM THEIR OWN WRONGDOING. ........ 5

POINT III ........ 7

THE COURT'S FAILURE TO APPLY GOVERNING LAW TREATS SIMILARLY AFFECTED PARTIES DIFFERENTLY, PRODUCING MANIFEST INJUSTICE AND WARRANTING RECONSIDERATION ........ 7

Post-Hennepin Claimants ........ 8

Third-Party Interests ........ 9

County/ Taxpayers ........ 10

POINT IV ........................................................................................................................ 12

THE COURT FAILED TO APPLY THE COMMON LAW OF TORTS IN NEW YORK WHEN ASSESSING DAMAGES AND APPORTIONING DAMAGES WITHOUT A TRIAL. ........................................................................ 12

(a) Benefit From Wrongdoing .......................................................................... 13

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alami v. Volkswagen of America, Inc.*,
97 N.Y.2d 281 (N.Y. 2002) ....................13

*Ashman v. Commissioner of Revenue*,
231 F.3d 541 (9th Cir. 2000) ....................13

*Bein v. Heath*,
47 U.S. 228 (1848)....................6

*Duhaney v. Kinexion, Inc.*,
No. 2:24-CV-08144 (LGD), 2026 WL 2164976 (E.D.N.Y. July 23, 2026)....................2

*In re Evergreen Mut. Funds Fee Litig.*,
240 F.R.D. 115 (S.D.N.Y. 2007) ....................1

*Ewell v. Daggs*,
108 U.S. 143 (1883) (*ex turpi causa*) ....................6, 13

*Flegenheimer v. Brogan*,
284 N.Y. 268 (N.Y. 1940) ....................6

*Grove v. Cornell Univ.*,
151 A.D. 3d. 1813 (4th Dept. 2017)....................12

*Kirschner v. KPMG LLP*,
15 N.Y.3d 446 (N.Y. 2010) ....................5, 6

*Kowalski v. Goodyear Tire & Rubber Co.*,
841 F. Supp. 104 (W.D.N.Y. 1994)....................4

*Lippes v. Atl. Bank of New York*,
69 A.D. 2d (1st Dept. 1979)....................12

*Liu v. S.E.C.*,
591 U.S. 71 (2020)....................13

*McConnell v. Commonwealth Pictures Corp.*,
7 N.Y.2d 465 (N.Y. 1960) ....................5, 6

*Medina v. City of New York*,
2022 WL 675977 (S.D.N.Y. 2022)....................12

*Memphis Community School District v. Stachura*,
477 U.S. 299 ....12

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
970 F.3d 133 (2d Cir. 2020)....1, 2

*Miller v. American Tobacco Co.*,
158 F. Supp. 48 (S.D.N.Y. 1957) ....5

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*,
372 F.3d 488 (2d Cir. 2004)....6, 13

*PermaLife Mufflers, Inc. v. Int'l Parts Corp.*,
392 U.S. 134 (1968)....10

*Pogorelc v. Commissioner of Revenue*,
150 N.E.3d 841 (M.A. 2020) ....13

*Pung v. Isabella Cnty., Michigan*,
609 U.S. 30 (2026)....7, 9

*R.H. Stearns Co. v. U.S.*,
291 U.S. 54 (1934)....5, 6, 13, 14

*Rehberg v. Paulk*,
132 S. Ct. 1497 (2012)....12

*Riggs v. Palmer*,
70 Sickels 506 (N.Y. 1889)....5

*Schwebel v. Crandall*,
967 F. 3d 96 (2d Cir. 2020)....15

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995)....2

*Slattery v. Clinton*,
No. 96 CIV. 2366 (DLC), 1997 WL 291868 (S.D.N.Y. June 2, 1997) ....1

*St. Lawrence Cnty. v. City of Ogdensburg*,
40 N.Y.3d 121 (2023) ....11

*Supreme Oil Co. v. Metro. Transportation Auth.*,
No. 96 CIV. 5169 (DLC), 1997 WL 715735 (S.D.N.Y. Nov. 12, 1997) ....1

*Thompson v. Booth*,
2022 WL 769386 (S.D.N.Y., 2022)....12

*Townes v. City of New York*,
176 F. 3d 138 (2d Cir. 1999)....................12

*Tyler v. Hennepin County*,
598 U.S. 631 (2023)....................7, 8, 9, 10, 11

*UCAR International Inc. v. Union Carbide Corp.*,
119 F. App'x 300 (2d Cir. 2004) (*in pari delicto*)....................6, 13

*Walker v. Schult*,
365 F. Supp. 3d 266 (N.D.N.Y. 2019)....................13

**Statutes**

42 U.S.C. § 1983....................4, 12, 13

Federal Rule of Civil Procedure 59(e)....................1

Local Civil Rule 6.3....................1

New York Civil Practice Law and Rules ("CPLR"):

CPLR § 1411....................5, 12

New York Real Property Actions and Proceedings Law ("RPAPL"):

RPAPL art.13....................8

New York Real Property Tax Law ("RPTL"):

RPTL art. 11....................4, 7, 9, 14

RPTL § 926....................10

RPTL § 1150....................8

RPTL §1197....................8

## PRELIMINARY STATEMENT

Defendant, Sullivan County (the "County" or "Sullivan") moves, pursuant to Federal Rule of Civil Procedure 59(e), for reconsideration of the Court's Judgment (Doc. No. 146), issued on September 23, 2026. A motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). Pursuant to that Judgment (Doc. No. 146) and Order (Doc. No. 145), Sullivan respectfully and timely submits this Memorandum of Law, together with the accompanying Affidavit of H. Todd Bullard ("Bullard Aff.") and the exhibits annexed thereto, in support of its Motion to Alter or Amend the Judgment. The essential facts are set forth in the record, including the Statement of Facts (Doc. No. 108-1) and the Bullard Aff. submitted herewith.

## ARGUMENT

### I. Standard of Review

#### *A. Applicable Federal Standard For Motion to Alter or Amend a Judgment.*

Federal Rule of Civil Procedure 59(e) provides grounds for relief from a final judgment when the movant satisfies the burden of demonstrating "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020). This S.D.N.Y. Court has consistently held that the standard governing Rule 59(e) motions is equivalent to the standard for motions for reconsideration under S.D.N.Y. Local Civil Rule 6.3. *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115 (S.D.N.Y. 2007); *Slattery v. Clinton*, No. 96 CIV. 2366 (DLC), 1997 WL 291868 (S.D.N.Y. June 2, 1997); *Supreme Oil Co. v. Metro. Transportation Auth.*, No. 96 CIV. 5169 (DLC), 1997 WL 715735 (S.D.N.Y. Nov. 12, 1997).

*B.* *Applicable Standard for Reconsideration.*

*i.* *Clear Error*

Clear error exists when the moving party can point to controlling decisions or factual data that the court overlooked — matters that might reasonably be expected to alter the conclusion reached by the court. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995). The Eastern District recently clarified that clear error can be found where the court: (1) failed to consider a controlling decision or factual matter that was placed before it, or (2) the court considered the authority but applied it incorrectly. *Duhaney v. Kinexion, Inc.*, No. 2:24-CV-08144 (LGD), 2026 WL 2164976 (E.D.N.Y. July 23, 2026).

*ii.* *Manifest Injustice*

Manifest Injustice is a related but distinct concept often paired with the clear error prong of the three-part standard for reconsideration. Courts have further held that manifest injustice is not established where a party merely disagrees with the outcome reached by the court, rather, it requires a showing that the court's prior ruling resulted in a fundamentally unfair outcome, such that a party was denied an adequate opportunity to present its evidence and arguments. *Duhaney v. Kinexion, Inc.*, No. 2:24-CV-08144 (LGD), 2026 WL 2164976, at 5 (E.D.N.Y. July 23, 2026). Here, Sullivan was denied an opportunity to present evidence before a trier of fact on damages.

The decision to reconsider a judgment is otherwise committed to the sound discretion of the district court, and a district court abuses its discretion when it bases its ruling on an incorrect legal standard or a clearly erroneous assessment of the facts. *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d at 142. The County satisfies the narrow standard for reconsideration because the Court overlooked record matters that might reasonably be expected to alter the judgment and because correction is necessary to prevent manifest injustice.

Specifically, the judgment does not address Count V, concerning "wealth equity," which remained pending, or the County's express request for a trial on that claim and an individualized hearing on damages for each Plaintiff. (See Doc. No. 134 at 3, 6). Those matters were before the Court and bear directly on both the scope of liability and the relief that could properly be awarded; their omission therefore warrants correction as clear error. Additionally, as set forth later in this memorandum, the Court did not examine the damages assessment consistent with state common and statutory law for torts.

Here, reconsideration is necessary to prevent a profoundly unfair result, not merely because the County disagrees with the Court's reasoning. As entered, the judgment is prejudicial and inequitable as it lacks adjudication of a surviving claim (Count V) and the requested assessment of damages (questions of fact remain) before a trier of fact while imposing consequences on post-*Hennepin* claimants, third-party lienholders, County taxpayers who satisfied their obligations, and the County, which administered then-governing state law. The County, for the below asserted reasons, thus seeks only the amendments needed to address the overlooked claim, permit proper adjudication and allocation of damages based on the existing factual record and through the requested hearing/ trial avoid consequences that the Court may not have considered.

## POINT I

## THE COURT'S FAILURE TO ADDRESS THE SURVIVING CLAIM AND REQUESTED DAMAGES HEARING WARRANTS RECONSIDERATION.

By this holding, the Court has created an unfair and improper strict liability standard in the tax surplus matters on both liability for conduct and assumed damages without any analysis or assessment of the factual record of the litigating parties' conduct.[1]

Here, the County has been deprived of its ability to have an evidentiary hearing on a remaining Count V as to "wealth equity" as well as an evidentiary hearing before a jury on the assessment of damages individually for each plaintiff. In practical effect by its holding, the Court applied the statutory bar to future claims solely one group of parties holding interests (lienholders, judgment creditors, and other governmental entities) in the property while allowing Plaintiffs to pursue future legal and equitable claims arising from the same property. The judgment identifies no rational or equitable basis for this disparate treatment. Simply put, the decision is in error and presents a matter of manifest injustice because it exposes the County to an unlimited and exponential financial exposure to reward Plaintiffs as delinquent taxpayers who failed to answer, redeem, set up an installment plan to pay, and in many instances, made a conscious economic decision not to pay taxes.

The County requested a decision on Count V of the Complaint and/or a hearing as to the assessment of damages. The *Monell* doctrine coupled with numerous historical informational materials as to the mandatory nature of RPTL art. 11 leads directly to the need to have any assessment of damages examined through the conduct of the parties. Moreover, because § 1983 claims are treated as constitutional torts, damages should be assessed under New York's

[1] Strict liability is only appropriate where a defendant engages in an abnormally dangerous (ultrahazardous) activity, which subjects the actor to liability for resulting harm even though the actor exercised the utmost care and acted without negligence. *Kowalski v. Goodyear Tire & Rubber Co.*, 841 F. Supp. 104 (W.D.N.Y. 1994).

comparative-fault framework, CPLR § 1411. That statute provides any "conduct attributable to the claimant … shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion that the culpable conduct … caused the damages." See N.Y. CPLR § 1411.

Here, Plaintiffs have not been made to prove the actual existence of their asserted "wealth equity." Indeed, a genuine issue of fact remains as to whether any such "equity" even exists after accounting for liens, judgments, and other encumbrances that may equal or exceed the value of the affected properties. As the Court recognized, a creditor, "subject to applicable limitations periods, retains the right to pursue legal action against the former property owner." (Doc. No. 145, at 3). In essence, the Court has been used to allow wrongdoers to benefit directly from their own wrongful conduct.

**POINT II**

**IT IS AGAINST PUBLIC POLICY FOR THE COURT TO PERMIT WRONGDOERS TO BENEFIT FROM THEIR OWN WRONGDOING.**

From our nation's founding, courts have consistently upheld the fundamental maxim of morality and fair dealing so that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own inequity, or to acquire property by his own crime." *Riggs v. Palmer*, 70 Sickels 506, 511 (N.Y. 1889); see also *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470 (N.Y. 1960); *Miller v. American Tobacco Co.*, 158 F. Supp. 48, 49–50 (S.D.N.Y. 1957); *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (N.Y. 2010) ("This principle has been wrought in the inmost texture of our common law for at least two centuries."); *R.H. Stearns Co. v. U.S.*, 291 U.S. 54, 61 (1934) ("The applicable principle is fundamental and unquestioned.").

As the *McConnell* court explained, determining whether to apply this public policy preclusion principle turns on "whether 'a recovery by the plaintiff should be denied for the sake of public interests.'" 7 N.Y.2d at 469 (quoting *Flegenheimer v. Brogan*, 284 N.Y. 268, 272 (N.Y. 1940)); see also *R.H. Stearns Co.*, 291 U.S. at 59–62 (rejecting further analysis of the underlying legal question and dismissing claim on public policy grounds). More specifically, the public interests to be considered under this analysis are, (1) the deterrence of future wrongful acts, and (2) the proper and efficient use of the court's time and resources. *Kirschner*, 15 N.Y.3d at 464. Where it is clear from the pleadings, the facts of the case, or a plaintiff's own admission, that allowing a claim to proceed would allow a plaintiff to take advantage of or benefit from their own wrongdoing, the court is obligated to bar such claim and prevent injustice. *Ewell*, 108 U.S. at 149; see *UCAR International Inc.*, 119 F. App'x at 302 ("The pleadings, taken together with the facts of which the district court took judicial notice . . . establish that the defense applies in this case.").

Courts in equity have utilized the doctrine to resolve disputes over property, contracts, torts, and even taxes. See e.g., *Ewell*, 108 U.S. 143 (property and contracts); *Kirschner*, 15 N.Y.3d 446 (professional malpractice and negligence); *R.H. Stearns Co.*, 291 U.S. 54 (income taxes); see also *PenneCom B.V.*, 372 F.3d at 493 ("'[t]he *equitable powers* of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.'") (quoting *Bein v. Heath*, 47 U.S. 228, 247 (1848)) (emphasis added).

Of note, Plaintiffs now seek to recover surplus funds from the government that they claim are rightfully due even though the foreclosure was a result of their own inaction. It is both unjust and contrary to the well-established and fundamental principle discussed above to allow such recovery. *Id*. at 61. This Court has an obligation to encourage property owners to pay their property taxes when they become due and to deter use of the courts to benefit on both sides of the

transaction. Further, the *Pung* Court established that a party's conduct is a relevant analysis in Tax Surplus cases. *Pung v. Isabella Cnty., Michigan*, 609 U.S. 30, 39 (2026). Any policy to the contrary would serve only to encourage economically minded property owners to utilize this process as another tool for seeking profits and avoiding their debts.

Furthermore, here, the Court overlooked and failed to apply a proper standard to assess damages in a negligence action involving the wrongful (though at the time lawful) retention of property. Hence, the culpable conduct of each party in this litigation is relevant and material and presents questions of fact. Indeed, on this summary judgment motion, there is no dispute as to the culpable conduct engaged in by certain Plaintiffs. See Doc. No. 130 (speaking to certain Plaintiffs admitting to making intentional business decisions not to pay property taxes); see also Exhibit C to Bullard Aff. Deposition Transcript of: Steven Eisenburg p.59 lines 25, p. 60, lines 2-13, p. 69, lines 7-12, 15-16; and Joseph Szymczak p. 51 lines 5-18, 21.

Of concern and as a bad precedent, the Court has overlooked the actual intentional conduct engaged in by certain Plaintiffs. By ignoring such conduct and not affording proper accountability, the Court is allowing the unjust enrichment and compensation to flow to Plaintiffs, resulting in their direct financial benefit. The shifting of the economic burden and benefits here is simply untenable.

## POINT III

## THE COURT'S FAILURE TO APPLY GOVERNING LAW TREATS SIMILARLY AFFECTED PARTIES DIFFERENTLY, PRODUCING MANIFEST INJUSTICE AND WARRANTING RECONSIDERATION

The judgment produces manifest injustice because its application of New York's Amended RPTL art. 11 and the incorporated by reference surplus-distribution law treats certain groups affected by the same tax-foreclosure process differently without a consistent legal or equitable basis. The resulting disparity affects four groups: (1) post-*Hennepin* claimants; (2) third-party

lienholders; (3) County taxpayers who timely satisfied their tax obligations; and (4) the County, which administered the then-governing statutory framework. The Court correctly holds that the amended RPTL §1197 does not apply to the pre-*Hennepin* Plaintiffs. However, and most importantly, the distribution of surplus should be consistent under the state law as to order of priority regardless of when one's claim accrues so as to avoid creating inequitable distribution.

*Post-Hennepin Claimants*

The first category is post-*Hennepin* claimants, those whose properties were sold after the *Tyler* decision. Such claimants illustrate the unequal operation of the judgment most directly. Although the amended RPTL § 1197 does not govern the pre-*Hennepin* Plaintiffs' claims, the order of priority for distributing surplus proceeds should remain consistent with New York law. The judgment instead permits the pre-*Hennepin* Plaintiffs to claim the surplus without applying the same distribution priorities and limitations that govern post-*Hennepin* claimants. That distinction elevates one class of claimants over another based solely on timing, rather than on a uniform application of the State's priority framework.

New York's statutory scheme supplies procedures and priority rules for distributing surplus proceeds, including the framework reflected in RPAPL art.13 and amended RPTL § 1197. Those provisions recognize that surplus proceeds may be subject to competing interests and therefore should not be awarded without accounting for the relative priority of affected claimants. By awarding the pre-*Hennepin* Plaintiffs an unrestricted right to the surplus while post-*Hennepin* claimants remain subject to the statutory distribution framework, the judgment creates two materially different rules for persons asserting interests in the same type of proceeds.

The judgment itself cited RPTL § 1150 as a procedure available for distributing surplus proceeds if invoked by the defaulting party or the municipality. (Order, Doc. No. 145. at 2). Yet,

the pre-*Hennepin* Plaintiffs did not redeem, answer, or otherwise act to avoid foreclosure. Their conduct is relevant to the equitable allocation of any recovery; the Supreme Court's recent decision in *Pung* likewise considered what the claimants did, or failed to do, to prevent foreclosure. *Pung*, 609 U.S. at 39 (taking into consideration that Pung had years to take steps and avoid foreclosure). Reconsideration is therefore warranted to ensure that the same legal principles, statutory priorities, and equitable considerations govern both pre- and post-*Hennepin* claimants.

*<u>Third-Party Interests</u>*

Before *Tyler* and the post-*Tyler* amendments to RPTL art. 11, a tax foreclosure extinguished the interests of all parties including delinquent owners and third-party lienholders who failed to appear or redeem, and none retained a right to surplus proceeds (in regards to state following New York's mandatory tax foreclosure scheme). *Tyler* altered that principle by recognizing that a delinquent taxpayer may retain a property interest in surplus value, or at minimum may assert a claim to that surplus. *Tyler v. Hennepin County*, 598 U.S. 631, 638–47 (2023) (holding that a government may not take more from a taxpayer than is owed and retain the excess value and concluding that the taxpayer had plausibly alleged a protected property interest in the surplus). Whether such an interest exists, however, depends not only on state law but also on traditional property-law principles, historical practice, and Supreme Court precedent. *Id.* at 638–39; see also *Pung*, 609 U.S. at 35–43 (2026) (looking to historical practice and precedent in holding that, following a fairly conducted tax sale, just compensation is measured by the auction-sale surplus rather than hypothetical fair-market value). New York's amended RPTL art. 11 recognizes that post-*Tyler* right by preserving a surplus interest that previously would have been extinguished upon foreclosure for <u>any</u> <u>interest</u> <u>holder</u> who failed to appear, including delinquent homeowners. This Court's judgment nevertheless revives that interest only for delinquent

taxpayers while continuing to treat third-party lienholders' interests as extinguished because they did not act in the foreclosure proceeding. (See Order, Doc. No. 145 at 2) (stating "All interested parties that do not answer or move to redeem the property in the foreclosure proceeding are forever 'barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel'"). That distinction is important as it cannot be just. It exemplifies the Court's partial treatment of the delinquent taxpayers, who likewise failed to answer, redeem, or otherwise act. If *Tyler* revived an interest in surplus proceeds previously extinguished by foreclosure, the statute cannot properly be interpreted to restore that interest solely to delinquent owners while denying it to other third-party interest holders based on the same failure to act.

Moreover, the issue is whether the existing distribution of surplus under RPTL § 926 previously cited by the Court as an option and the scheme under RPAPL concerns the assessment of damage and directly the distribution of funds.

Simply put, the Court overlooks the exposure of County governments to claims by third party interest holders that can argue that their claims are just as valid under *Tyler* as the delinquent taxpayer who failed to answer, redeem, or otherwise move to avoid foreclosure.

*County/Taxpayers*

Finally, the third class of persons adversely and prejudicially impacted are the non-delinquent taxpayers who faithfully discharge their obligations. In that regard, the Court has overlooked and discounted the fundamental premise of jurisprudence doctrine which is, a wrongdoer shall not be permitted to profit through his own wrongdoing. *PermaLife Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 151 (1968).

As applied in this Summary Judgment context, there is no issue of fact clearer as to wrongdoing than Plaintiff Harvey Edelglass. This Plaintiff engaged in deceit and manipulation

for personal gain. (See Court requested Supplemental Briefing, Doc. No. 134 at 2) (speaking to Edelglass's pattern of avoiding debt payments and having liens and judgments amounting to well over $1 million dollars including sums owed to the NY Department of Labor). Further, other Plaintiffs in this action made conscious intentional decisions based solely on personal business economics to the detriment of the County. See Bullard Aff. Exhibit C.

As it relates to tax-paying individuals, this judgment sets a bad precedent that non-taxpaying individuals be allowed to enjoy the same benefits of government services funded by taxpayers and also be unjustly enriched by surplus that the Sullivan  will need to raise money to pay since such monies were not preserved pre-*Hennepin*. As explained in the affidavits submitted in support of the County's motion for summary judgment, the County must make school districts, towns, villages, and cities whole when the nonpayment of real property taxes creates revenue shortfalls. See Buck Motion Aff (Doc. No. 110); see also *St. Lawrence Cnty. v. City of Ogdensburg*, 40 N.Y.3d 121, 124 (2023) (stating that the county, under RPTL, must "credit the city", the amount of correctly reported "unpaid delinquent taxes" including school taxes). During the years in which the affected properties remained in foreclosure, the County received no tax revenue from those properties. Those unpaid amounts are not deducted from the surplus proceeds. Instead, the County, and, ultimately, property owners who timely pay their taxes bear that cost until the properties are sold and returned to the tax rolls.

The County respectfully requests this Court to reconsider its holding based on the equities. Specifically, the County asks the Court to order a trial on Count V of the Complaint that was not dismissed or in the alternative, have a trial on all issues of damages before a jury to allow a full factual development of conduct and circumstances as to the actual foreclosure of each Plaintiff.

## POINT IV

## THE COURT FAILED TO APPLY THE COMMON LAW OF TORTS IN NEW YORK WHEN ASSESSING DAMAGES AND APPORTIONING DAMAGES WITHOUT A TRIAL.

The Supreme Court in *Memphis Community School District v. Stachura*, supra 477 U.S. 299, held that "when § 1983 Plaintiffs seek damages for violation of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts". 477 U.S. at 306. Applying New York law, it has been held that "[F]urther, the use of the term 'culpable conduct' in CPLR Section 1411, rather than negligent conduct presents further support to the view that the legislative intent was to release the concept of damage apportionment from the parochial confines of accident cases and to broaden its application flexibility 'to reach any breach of legal duty of fault by the defendant, including but not limited to negligence in any degree, breach of warranty, strict liability and violation of a statutory duty" . *Lippes v. Atl. Bank of New York*, 69 A.D. 2d, 127, 137 (1st Dept. 1979); See also *Grove v. Cornell Univ*., 151 A.D. 3d. 1813, 1817 (4th Dept. 2017), *Townes v. City of New York*, 176 F. 3d 138, 146 (2d Cir. 1999).

The Second Circuit, in *Townes*, reasoned that "deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory – damages grounded in determination of plaintiffs' actual losses." *Townes*, *supra* at 146. Here, the County's request for a trial on damages was denied and the Court made a factual determination without applying the common law principles for tort awards.

Further, the district court, in *Thompson v. Booth*, 2022 WL 769386 (S.D.N.Y., 2022), opined and reasoned that "[C]ommon law tort principles generally determine the appropriate level of damages for a violation of a plaintiff's constitutional rights in a Section 1983 action" at *2; see also *Rehberg v. Paulk*, 132 S. Ct. 1497, 1502 (2012), *Medina v. City of New York*, 2022 WL 675977 (S.D.N.Y. 2022).

Here, under well-settled body of law, the assessment of damages in a § 1983 action is only properly considered under the New York State common law on torts. The constitutional violation was not meant to effect a radical departure from ordinary tort law.

This Court's adoption of Plaintiffs' theory is a radical departure from state tort law and provides "unjust compensation" to Plaintiffs. In addition, the Court ignores the Plaintiffs' improper and in certain instances intentional conduct in failing to pay the taxes for purely self-economic advantage at the expense of other taxpayers. Thus, it is a basic tenet that "the level of damages is ordinarily determined according to principles derived from the common law of torts." *Walker v. Schult*, 365 F. Supp. 3d 266 (N.D.N.Y. 2019).

**(a) Benefit From Wrongdoing**

As previously cited above, "[N]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *R.H. Stearns Co. v. U.S.*, 291 U.S at 61. While this maxim has persisted through time and evolution of the law, it has adopted different titles in different contexts and jurisdictions. *Liu v. S.E.C.*, 591 U.S. 71, 79 (2020); see e.g., *Ewell v. Daggs*, 108 U.S. 143, 149 (1883) (*ex turpi causa*); *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (unclean hands); *UCAR International Inc. v. Union Carbide Corp.*, 119 F. App'x 300, 301 (2d Cir. 2004) (*in pari delicto*); *Alami v. Volkswagen of America, Inc.*, 97 N.Y.2d 281, 286 (N.Y. 2002) (*Barker/Manning* rule); *Pogorelc v. Commissioner of Revenue*, 150 N.E.3d 841, 846 (M.A. 2020) (the duty of consistency). Regardless of the chosen title, however, this foundational public policy "'not only reflects basic fairness but also shows a proper regard for the administration of justice and the dignity of the law.'" *Pogorelc*, 150 N.E.3d at 846 (quoting *Ashman v. Commissioner of Revenue*, 231 F.3d 541, 543–44 (9th Cir. 2000)).

Further, the applicability of this doctrine is not limited to disputes between private parties but also with the government. In *R.H. Stearns Co.*, for example, the Supreme Court was presented with the issue of a taxpayer commencing an action against the federal government to recover an alleged overpayment of taxes. 291 U.S. at 56. Years earlier the government had sought to collect unpaid taxes from the taxpayer, and in response, the taxpayer requested that his subsequent overpayment be applied to the balance he owed for the year previous. *Id.* at 57–58. The government fulfilled this request, but according to the taxpayer, it failed to sign the required paperwork. *Id.* at 58–59. Thus, the taxpayer sought recovery of his overpayment on the grounds that the government's application of the overpayment to his earlier debt was void. *Id.* at 60. The Supreme Court rejected this argument and barred recovery by the taxpayer, stating, "no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *Id.* at 61–62.

Claims for tax surplus are no different and should be analyzed similar to the claims against the government in *R.H. Stearns Co.*. First, in this matter, there is no dispute that Plaintiffs did not pay their real property taxes, that plaintiffs had notice of the pending foreclosure action, and that plaintiffs had the opportunity to ward off such foreclosure by paying the taxes due, seeking a payment plan, filing an answer, or redeeming the property. Because the Plaintiffs made the willful and knowing decision not to do so, the County next effectuated a foreclosure in accordance with the law as it existed at the time as recognized by well-settled law in New York. In comparison, Sullivan simply followed the dictates of art. 11 of RPTL. Sullivan's conduct along with numerous other Counties was consistent with the law at that time,

When weighing all the factors and the precedent of such a decision, There should be a trial based on the issues raised as to "unjust compensation" for certain Plaintiffs whose culpable

conduct should be weighed by a jury when seeking to impose damages on the County—an innocent party with no role in developing or drafting state tax policy. Now, plaintiffs seek to recover surplus funds from the government that they claim are rightfully due. It is both unjust and contrary to the well-established and fundamental principles to allow such recovery without a trial consistent with New York tort common law and related statutes.

Moreover, the Second Circuit in *Schwebel v. Crandall*, 967 F. 3d 96, 106 (2d Cir. 2020), has held "[A]s this Court has observed, a fundamental and unquestioned principle of our jurisprudence [is] that no one shall be permitted to … take advantage of her own wrong."

Certain Plaintiffs here clearly and without any dispute are benefitting from their own wrongs. The County has pointed out with documentary evidence that Plaintiff Edelglass has and will benefit from a judgment that allows him to escape accountability to the federal and state government along with lienholders. Such intentional evasive conduct should not be rewarded.

Moreover, under New York tort law, the parties' respective culpable conduct related to a damages award for a tort claim is a material factual issue that was not addressed in a proper forum with an evidentiary hearing before a trier of fact.

Here, this Court, despite evidence as to the wrongdoing of the Plaintiffs, and in certain circumstances egregious conduct, made a factual determination on tort damages without application of New York tort common law and related CPLR statutes. The County should be afforded an opportunity to develop facts as to culpable conduct of the Plaintiffs consistent with state tort law as to a damages assessment.

## CONCLUSION

Based on the foregoing, Sullivan's motion to reconsider should be granted in all respects.

Dated: October 12, 2026

H. Todd Bullard

H. Todd Bullard, Esq.
Taville T. Francis, Esq.
**Harris Beach Murtha Cullina PLLC**
*Attorneys for Sullivan County Defendants*
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8800